United States Bankruptcy Court
District of South Carolina (Columbia)

|  |  |
|---|---|
| IN RE:<br><br>Bruce W Neel<br><br><div align="right">Debtor(s)</div> | Chapter 7<br>Case No.: 19-01190-dd<br><br>**NOTICE OF MOTION FOR RELIEF<br>FROM AUTOMATIC STAY<br>11 U.S.C. §362(a)** |

**TO: DEBTOR(S), TRUSTEE, AND THOSE NAMED IN THE ATTACHED MOTION**

PLEASE TAKE NOTICE THAT a hearing will be held on the attached motion on:

Date:  August 15, 2019
Time:  10:00 AM
Place: J. Bratton Davis United States Bankruptcy Courthouse, 1100 Laurel Street, Columbia, SC 29201

Within fourteen (14) days after service of the attached Motion, and the Notice of Motion, the Movant's Certification of Facts, (and a blank Certification of Facts form, applicable only to motions for relief from the automatic stay and for service on pro se parties only), any party objecting to the relief sought shall:

(1)  File with the clerk a written objection to the 11 U.S.C. §362 Motion;

(2)  File with the clerk a Certification of Facts;

(3)  Serve on the movant items 1 and 2 above at the address shown below; and

(4)  File a certificate of such service with the clerk.

If you fail to comply with this procedure, you may be denied the opportunity to appear and be heard on this proceeding before the court.

Date of Service: _07/03/2019_

/s/ Louise M. Johnson
Ronald C. Scott (District Court ID 3768)
Reginald P. Corley (District Court I.D. 7832)
Louise M. Johnson (District Court I.D. 7509)
Angelia J. Grant (District Court I.D. 11276)
Tasha B. Thompson (District Court I.D. 10216)
Allison E. Heffernan (District Court I.D. 12603)
H. Guyton Murrell (District Court I.D. 6153)
Scott and Corley, P.A.
2712 Middleburg Dr., Suite 200 (29204)
Post Office Box 2065
Columbia, SC 29202
(803) 252-3340

United States Bankruptcy Court
District of South Carolina (Columbia)

| | |
|---|---|
| IN RE: | Chapter 7 |
| Bruce W Neel | Case No.: 19-01190-dd |
| Debtor(s) | **MOTION FOR RELIEF FROM AUTOMATIC STAY 11 U.S.C. §362(a)** |

Nationstar Mortgage LLC d/b/a Mr. Cooper ("Movant"), a secured creditor of Bruce W Neel ("Debtor(s)"), hereby moves this Court for relief from the Automatic Stay of 11 U.S.C §362(a), by termination of the stay as to Movant's collateral, on the following grounds:

1.  Debtor(s) filed a Petition for Relief under Chapter 13 of the Bankruptcy Code on March 1, 2019. However, the case converted to Chapter 7 on April 25, 2019.

2.  The Trustee of the Debtor(s)' estate may claim an interest in the property which is the subject of this action.

3.  As of June 11, 2019, Debtor was contractually delinquent in the total amount of $36,237.06. As of June 11, 2019, the loan payoff amount was $391,809.72. Movant believes Debtor does not have any equity in the subject property. Debtor's Statement of Intentions indicates that Debtor intends to retain the subject property by way of approval for a Loan Modification. Debtor was denied for a Loan Modification on May 12, 2019. The Denial Letter is attached to this Motion.

4.  Movant has a valid security interest in the property described in that certain mortgage dated October 31, 2007 and recorded November 5, 2007, in the office of the RMC/ROD for Richland County in Book 1373 at Page 1582 in the original principal sum of $350,000.00. A copy of the Note, Mortgage, and applicable Assignment(s) are attached to the Movant's Certification of Facts.

5.  The interest of Movant with respect to the mortgaged premises continues to worsen and is not adequately protected while a large indebtedness remains upon this account.

6.  Movant requests an award of attorney's fee and costs pursuant to the terms of the note and mortgage.

7.    The Movant agrees to waive any claim that may arise under 11 U.S.C. § 503(b) or § 507(b) as a result of this Motion. The Movant further agrees that any funds realized from the foreclosure sale, in excess of all liens, costs, and expenses, will be paid to the Trustee.

8.    Attached to the Certification of Facts are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek lift of the automatic stay, and foreclose, if necessary.

**WHEREFORE**, Movant prays:

1.    The stay pursuant to 11 U.S.C. §362(d) be modified to permit Movant to pursue any state court remedies under its mortgage on the above-mentioned property, including sending any required notice;

2.    The Court awards attorney's fees and costs for this Motion; and

3.    The Court orders such other relief as may be just and proper.

/s/Louise M. Johnson
Ronald C. Scott (District Court ID 3768)
Reginald P. Corley (District Court I.D. 7832)
Louise M. Johnson (District Court I.D. 7509)
Angelia J. Grant (District Court I.D. 11276)
Tasha B. Thompson (District Court I.D. 10216)
Allison E. Heffernan (District Court I.D. 12603)
H. Guyton Murrell (District Court I.D. 6153)
Scott and Corley, P.A.
2712 Middleburg Dr., Suite 200 (29204)
Post Office Box 2065
Columbia, SC 29202
(803) 252-3340

Date: 07/03/2019

United States Bankruptcy Court
District of South Carolina (Columbia)

| | |
|---|---|
| IN RE: | Chapter 7 |
| Bruce W Neel | Case No.: 19-01190-dd |
| Debtor(s) | **CERTIFICATION OF FACTS** |

In the above-entitled proceeding, in which relief is sought by Nationstar Mortgage LLC d/b/a Mr. Cooper from the automatic stay in accordance with 11 U.S.C Section 362, I do hereby certify to the best of my knowledge the following:

1. <u>Nature of Movant's Interest:</u>
   Secured

2. <u>Brief Description of Security Interest, copy attached (if applicable):</u>
   Note, Mortgage, and applicable Assignment(s)

3. <u>Description of Property Encumbered by Stay (Include serial number, lot and block number, etc.):</u>
   13 Ascot Glen Ct, Irmo, SC 29063, Richland County – TMS# 4116-06-05

4. <u>Basis for Relief (property not necessary for reorganization, debtor has no equity, property not property of estate, etc.; include applicable subsection of Section 362):</u>
   11 U.S.C. §362(d)1 and/or (d)2

5. <u>Prior Adjudication of Other Courts, copy attached, (Decree of foreclosure, Order of possession, Levy of execution, etc., if applicable):</u>  N/A

6. <u>Valuation of Property (Appraisal, Blue Book, etc.):</u>

   | | | |
   |---|---|---|
   | Fair Market Value | $550,000.00 | |
   | Senior Liens | $0.00 | |
   | Movant's Lien | $391,809.72 | Payoff as of June 11, 2019 |
   | Other Subordinate Liens | $529,573.00 | |
   | Net Equity | $0.00 | |
   | Source/Basis of Value | Debtor's Schedules | |

7. <u>Amount of debtor's estimated equity (using figures from paragraph 6, supra):</u>
   $0.00

8. <u>Month and Year in Which First Direct Post-petition Payment Came Due to Movant (if applicable):</u>
   N/A – Chapter 7

9. <u>(a) For Movant/Lienholder (if applicable): List or attach a list of all post-petition payments received directly from debtor(s), clearly showing date received, amount, and month and year for which each such payment was applied:</u>
   N/A – Chapter 7

   <u>(b) For Objecting Party (if applicable): List or attach a list of all post-petition payments included in the Movant's list from (a) above which objecting party disputes as having been made. Attach written proof of such payment(s) or a statement as to why such proof is not available at the time of filing this objection:</u>

10.    <u>Month and Year in Which Post-petition Account of Debtor(s) is Due as of the Date of this Motion:</u>
N/A    Chapter 7

/s/Louise M. Johnson

Ronald C. Scott (District Court ID 3768)
Reginald P. Corley (District Court I.D. 7832)
Louise M. Johnson (District Court I.D. 7509)
Angelia J. Grant (District Court I.D. 11276)
Tasha B. Thompson (District Court I.D. 10216)
Allison E. Heffernan (District Court I.D. 12603)
H. Guyton Murrell (District Court I.D. 6153)
Scott and Corley, P.A.
2712 Middleburg Dr., Suite 200 (29204)
Post Office Box 2065
Columbia, SC 29202
(803) 252-3340

Date: 07/03/2019

United States Bankruptcy Court
District of South Carolina (Columbia)

IN RE:

Bruce W Neel

                                                    Chapter 7
                                                    Case No.: 19-01190-dd

                                    Debtor(s)        **CERTIFICATE OF SERVICE**

I, the undersigned employee of Scott and Corley, P.A., do hereby certify a copy of the Notice of Motion,

Motion for Relief from Automatic Stay, Certification of Facts, and Certificate of Service was mailed to the

parties listed below:

Bruce W Neel
13 Ascot Glen Ct.
Irmo, SC 29063

Daniel A. Stone
Stone Law Firm, LLC
PO Box 3884
Irmo, SC 29063

Robert F. Anderson
P.O. Box 76
Columbia, SC 29202-0076

                                    /s/Frank Dixon
                                    _____
                                    Frank Dixon Bankruptcy Paralegal
                                    SCOTT AND CORLEY, P.A.
                                    P.O. Box 2065
                                    Columbia, SC 29202

Columbia, South Carolina
Date: 07/03/2019

## Motion For Relief Information

| | |
|---|---|
| Version # | |
| Last Revised Date: | 6/11/2019 |

### Loan Demographics

| Account Number | ████5523 | Case Number | 19-01190 | Property Address | 13 ASCOT GLEN CT IRMO    SC 29063 |
|---|---|---|---|---|---|

### Bankruptcy Filing Information

| | | | | | | Repeat Filer | No |
|---|---|---|---|---|---|---|---|
| Filed By | Bruce W Neel | Chapter Filed | | Chapter 7 | | Gov't Loan | No |
| | | Bankruptcy Filing Date | 3/1/2019 | Conversion Date | 4/25/2019 | POC Filing Date | N/A |
| District | District of South Carolina (Columbia) | | | | | 1st Post Due Date | 4/1/2019 |
| Beneficiary (Picture as the Name of) | CONVENTIONAL/FHA/VA/RHS: Nationstar Mortgage LLC d/b/a Mr. Cooper | | | | | | |

### First Borrower

| | | | | Non-filing Co-Signer | |
|---|---|---|---|---|---|
| Name | BRUCE    W NEEL | SSN | | | |

### Second Borrower

| | | | | Non-filing Co-Signer | |
|---|---|---|---|---|---|
| Name | | SSN | | | |

### Payoff Figures as of: 6/11/2019 / Delinquent Contractual/Post Petition Payments

| Payoff Figures as of: | 6/11/2019 | | Date Due | Amount Due (P&I and Escrow) | Principle & Interest | Escrow | Number of Months | Total Due |
|---|---|---|---|---|---|---|---|---|
| Unpaid Balance | $ 353,727.96 | | 1/1/2018 to 3/1/2018 | $ 2,004.87 | $ 1,475.76 | 529.11 | 3 | $ 6,014.61 |
| Interest Amount | $ 20,936.03 | | 4/1/2018 to 3/1/2019 | $ 2,021.38 | $ 1,475.76 | 545.62 | 12 | $ 24,256.56 |
| Interest Rate | 3.875% | | 4/1/2019 to 6/1/2019 | $ 1,988.63 | $ 1,475.76 | 512.87 | 3 | $ 5,965.89 |
| Per Diem | 37.55 | | | | | | | |
| Escrow Advance | $ 8,418.67 | | | | | | $ - |
| Corporate Advance | $ 8,727.06 | | | | | | $ - |
| NSF | $ - | | | | | | $ - |
| Total Suspense* | $ - | | | | | | $ - |
| *Includes all Pre-Petition and Post - Petition Suspense | | | Suspense** | $ - | | | | |
| TOTAL | $ 391,809.72 | | TOTAL | | | | | 36,237.06 |

*If Chapter 13, will include Post Petition Suspense
**If Chapter 7, will include all suspense

### MFR Dates/Amount / National Settlement Agreement*

| MFR Dates/Amount | | National Settlement Agreement* |
|---|---|---|
| Contractual Due Date as per LSAMS | 1/1/2018 | Is this loan under the National Settlement Agreement? |
| Current Post Petition Due date as per Post Ledger | 4/1/2019 | |
| Contractual/Post Petition Payment Amount Due (P&I and Escrow) | $ 2,004.87 | *All loans acquired from Bank of America effective January 1,2013. |

### Other Information / Right to Foreclosure Language*

| Other Information | | Right to Foreclosure Language* |
|---|---|---|
| Property Treatment | Retained | right to foreclose language in the Motion for Relief |
| Property Status | Secured | |
| Motion for Dismissal Filing Date | N/A | |
| Pending Discharge | No | All Motions for Relief from Stay shall include a statement that sets forth the basis for asserting that the applicable party has the right to foreclose. |
| Trustee Pay All | No | |
| Loss Mitigation Status | Not Active | |
| Interest Amount at the Time of Filing | #REF! | |

If any and all available denial letters are required in CA

.quired. If for FL and MD, breakdowns for Corp Advances and Escrow Advances are required

I payment history is needed for one year prior to the contractual due date.

| Payment Address | All payments and mail |
|---|---|
| Nationstar Mortgage LLC | should be addressed as |
| PO Box 619094 | ATTN: Bankruptcy Dept |
| Dallas, TX 75261-9741 | |
| Correspondence Address | |
| Nationstar Mortgage LLC | |
| PO Box 630267 | |
| Irving, Texas 75063 | |

### Comments

LPR:  11/07/17

| Processed by | Showkathali.S |
|---|---|

### Escrow Advances

| Escrow Account | Date | Recovery (Debit) | Advance (Credit) | Escrow Account | Date | Recovery (Debit) | Advance (Credit) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

MIN: ███████████                    Loan Number: ███████████

# INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE
### (One-Year LIBOR Index (As Published In *The Wall Street Journal*)
### Rate Caps - 10 Year Interest Only Period)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED
INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY
MONTHLY PAYMENT.  THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE
INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I
MUST PAY.

OCTOBER 31, 2007                    Irmo                    SOUTH CAROLINA
[Date]                              [City]                  [State]

            13 ASCOT GLEN CT., Irmo, South Carolina 29063
                              [Property Address]

## 1.  BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 350,000.00       (this amount is
called "Principal"), plus interest, to the order of Lender.  Lender is  SOUTH CAROLINA BANK AND
TRUST, N.A., A NATIONAL BANK
I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note.  Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest
at a yearly rate of      6.125 %.  The interest rate I will pay may change in accordance with Section 4 of this
Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after
any default described in Section 7(B) of this Note.

## 3.  PAYMENTS
(A)  Time and Place of Payments
I will make a payment on the   1st   day of every month, beginning on   DECEMBER 1
2007       .  Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note,
my payment will consist only of the interest due on the unpaid principal balance of this Note.  Thereafter, I will pay
principal and interest by making a payment every month as provided below.
I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment
Due Date as described in Section 4 of this Note.  I will make these payments every month until I have paid all of the
principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment
will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied
to interest before Principal.  If, on   NOVEMBER 1, 2037   , I still owe amounts under this Note, I will
pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at    520 GERVAIS ST., SUITE 310, COLUMBIA,
SOUTH CAROLINA 29201
                              or at a different place if required by the Note Holder.

Borrower Initials: *Bror*

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,786.46        until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest, at the rate determined as described in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

## 4.    ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the    1st    day of NOVEMBER, 2012            , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding    TWO  AND 250/1000                         percentage points (    2.250  %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than    11.125  % or less than    2.250  %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than   TWO  AND  000/1000 percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than    11.125  %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

Borrower Initials: _Bror_ _____    _____    _____

MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE
ONE-YEAR LIBOR INDEX - 10 YR. INTEREST ONLY PERIOD
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3635  06/05 (rev. 09/06)                    Page 2 of 6

DocMagic *eForms* 800-649-1362
www.docmagic.com

(F)  Notice of Changes
Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.
(G)  Date of First Principal and Interest Payment
The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

5.  BORROWER'S RIGHT TO PREPAY
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid Interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.  LOAN CHARGES
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then:  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.  BORROWER'S FAILURE TO PAY AS REQUIRED
(A)  Late Charges for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of   15   calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be     5.000  % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter.  I will pay this late charge promptly but only once on each late payment.
(B)  Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
(C)  Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
(D)  No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

Borrower Initials: _Bwr_  ___  ___  ___  ___

MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE
ONE-YEAR LIBOR INDEX - 10 YR. INTEREST ONLY PERIOD
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3636  08/06 (rev. 09/06)                    Page 3 of 6

DocMagic EFarms 800-649-1362
www.docmagic.com

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

Borrower Initials: _Bwr_

MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE
ONE-YEAR LIBOR INDEX - 10 YR. INTEREST ONLY PERIOD
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3636  08/05 (rev. 09/06)                Page 4 of 6

DocMagic €Forms 800-649-1362
www.docmagic.com

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)  When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower Initials: _Bwr_ _____

MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE
ONE-YEAR LIBOR INDEX - 10 YR. INTEREST ONLY PERIOD
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3535  06/05 (rev. 09/06)          Page 5 of 6

DocMagic eForms 800-649-1362
www.docmagic.com

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
BRUCE W. NEEL                    -Borrower                                           -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                           -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                           -Borrower

*[Sign Original Only]*

MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE
ONE-YEAR LIBOR INDEX - 10 YR. INTEREST ONLY PERIOD
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3535  06/05 (rev. 09/06)              Page 6 of 6

DocMagic eFstems 800 649-1362
www.docmagic.com

# ALLONGE

LOAN #: ███████████

Borrower(s): BRUCE W. NEEL

Property Address: 13 ASCOT GLEN CT., Irmo, South Carolina 29063

Principal Balance: 350,000.00

Loan Date: OCTOBER 31, 2007

PAY TO THE ORDER OF

COUNTRYWIDE BANK, FSB

Without Recourse

SUBJECT TO THE REPRESENTATIONS AND WARRANTIES CONTAINED IN THE CONTINUOUS BUY-SELL
AGREEMENT BETWEEN SOUTH CAROLINA BANK AND TRUST, N.A., A NATIONAL BANK
AND
COUNTRYWIDE BANK, FSB

Company Name: SOUTH CAROLINA BANK AND TRUST, N.A., A NATIONAL BANK

By: _____        Vice President
              (Name)                                      (Title)

Chad Harmon

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

BY _____
        LINDA DE JACOER
    SENIOR VICE PRESIDENT

Multistate Note Allonge

This is a certified, true and correct copy of the original
sent for recordation.

After Recording Return To:
SOUTH CAROLINA BANK AND TRUST, N.A.
520 GERVAIS ST., SUITE 310
COLUMBIA, SOUTH CAROLINA 29201
Loan Number:

Book 1373-1592
2007000977 11/05/2007 10:38:49.420
FeeIs12.00  County Tax $6.00

Mortgage
State Tax: $6.00

2007000977 RILLIE IN M ...

National County RGD

[Space Above This Line For Recording Data]

## MORTGAGE

MIN:

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated   OCTOBER 31, 2007        , together with all Riders to this document.
(B)  "Borrower" is  BRUCE W. NEEL


Borrower is the mortgagor under this Security Instrument.
(C)  "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the mortgagee under this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D)  "Lender" is   SOUTH CAROLINA BANK AND TRUST, N.A.


Lender is a   NATIONAL BANK                                                         organized
and existing under the laws of   SOUTH CAROLINA
Lender's address is   520 GERVAIS ST., SUITE 310, COLUMBIA, SOUTH
CAROLINA 29201
(E)  "Note" means the promissory note signed by Borrower and dated   OCTOBER 31, 2007      .
The Note states that Borrower owes Lender   THREE HUNDRED FIFTY THOUSAND AND
00/100                               Dollars (U.S. $ 350,000.00      ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
NOVEMBER 1, 2037      .
(F)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

Borrower Initials:

SOUTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS   DocMagic <i>eForms</i> 800-649-1362
Form 3041 01/01)                              Page 1 of 14                              www.docmagic.com

(H)  "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider          ☒ Planned Unit Development Rider
☐ Balloon Rider                  ☐ Biweekly Payment Rider
☐ 1-4 Family Rider               ☐ Second Home Rider
☐ Condominium Rider              ☐ Other(s) [specify]

(I)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)  "Escrow Items" means those items that are described in Section 3.

(M)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the

          COUNTY                  of              RICHLAND
    [Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

Borrower Initials: _BW_

SOUTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS   DocMagic ☎800-549-1362
Form 3041 01/01                          Page 2 of 14                              www.docmagic.com

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS
EXHIBIT "A".

which currently has the address of                13 ASCOT GLEN CT.
                                                      [Street]

    Irmo                    , South Carolina        29063        ("Property Address"):
    [City]                                          [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors
and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter
erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All
replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in
this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the
interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as
nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests,
including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender
including, but not limited to, releasing and cancelling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right
to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall
pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late
charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due
under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other
instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid,
Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in
one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,
treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured
by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
    Payments are deemed received by Lender when received at the location designated in the Note or at such other
location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return
any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender
may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights
hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not
obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of
its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds
until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of
time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be
applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim

Borrower Initials: _____

SOUTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS   DocMagic 800-649-1362
Form 3041 01/01                                    Page 3 of 14                              www.docmagic.com

which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree

Borrower Initials _Bwn_

SOUTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    DocMagic *838822* 800-649-1362
Form 3041 01/01                                    Page 4 of 14                                    www.docmagic.com

In writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any

Borrower Initials: _Bow_

SOUTH CAROLINA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS   DocMagic eForms 800-649-1362
Form 3041 01/01                              Page 5 of 14                                      www.docmagic.com

form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

Borrower Initials: _Bwr_

SOUTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS   DocMagic   www.docmagic.com
Form 3041 01/01                                   Page 6 of 14

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to:  (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease.  Borrower shall not, without the express written consent of Lender, alter or amend the ground lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

Borrower Initials:  _Bw_  _____  _____  _____

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate

Borrower Initials: _Bwn_

SOUTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    DocMagic €Forms 800-649-1362
Form 3041 01/01                                         Page 8 of 14                                         www.docmagic.com

as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's

Borrower Initials: _Bwn_

address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will

Borrower Initials: _Bwn_

SOUTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    DocMagic ᶜ⁶⁰ˣˢˣˢ⁴ˢ 800-649-1362
Form 3041 01/01                                     Page 10 of 14                                      www.docmagic.com

state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified

Borrower Initials: _Bwn_

in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence, all of which shall be additional sums secured by this Security Instrument.

23. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Homestead Waiver.** Borrower waives all rights of homestead exemption in the Property to the extent allowed by Applicable Law.

25. **Waiver of Appraisal Rights.** The laws of South Carolina provide that in any real estate foreclosure proceeding a defendant against whom a personal judgment is taken or asked may within 30 days after the sale of the mortgaged property apply to the court for an order of appraisal. The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. TO THE EXTENT PERMITTED BY LAW, THE UNDERSIGNED HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE MORTGAGED PROPERTY. This waiver shall not apply so long as the Property is used as a dwelling place as defined in §12-37-250 of the South Carolina Code of Laws.

26. **Future Advances.** The lien of this Security Instrument shall secure the existing indebtedness under the Note and any future advances made under this Security Instrument up to 150% of the original principal amount of the Note plus interest thereon, attorneys' fees and court costs.

Borrower Initials: _Bwn_

SOUTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS   DocMagic eForms 800-649-1362
Form 3041 01/01                                   Page 12 of 14                                   www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)                     _____ (Seal)
BRUCE W. NEEL                -Borrower                                          -Borrower

_____ (Seal)                     _____ (Seal)
                             -Borrower                                          -Borrower

_____ (Seal)                     _____ (Seal)
                             -Borrower                                          -Borrower

Signed, sealed and delivered in the presence of:

_____                            _____
Witness                                            Witness

SOUTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS  DocMagic eForms 800-649-1362
Form 3041 01/01                         Page 13 of 14                              www.docmagic.com

———————— [Space Below This Line For Acknowledgment] ————————

STATE OF SOUTH CAROLINA          )

COUNTY OF __RICHLAND_____   )

Personally appeared before me __Benton D. Williamson_____

(first witness) and made oath that he/she saw the within named __BRUCE W. NEEL__

_____

_____

(grantor) sign, seal, and as his/her act and deed, deliver the within written mortgage, and that he/she, with

__Kenneth D. Strohecker_____ (second witness), witnessed the execution thereof.

_Benton Williamson_
Witness

SWORN to before me this _31st_ day of ·OCTOBER, 2007_____ .

_Kenneth D. Stroh___ (LS)
Notary Public for South Carolina

(Seal)                    My commission expires: _6/14/16_

SOUTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS  DocMagic ☎800-649-1362
Form 3041 01/01                          Page 14 of 14                          www.docmagic.com

## EXHIBIT A

All that certain piece, parcel or lot of land, with the improvements thereon, situate, lying and being in the County of Richland, State of South Carolina, being shown and delineated as Lot 281 on a plat of Ascot Glen Phase One prepared by Belter & Associates, Inc. dated July 12, 1998, last revised June 21, 2000, and recorded in the Office of the ROD for Richland County in Record Book 455, at Page 711; reference being made to said plat which is incorporated herein by reference for a more complete and accurate description; all measurements being a little more or less.

This being the same property conveyed to Bruce W. Neel and Laura L. Neel by deed of Sovereign Homes, LTD. dated February 14, 2002, and recorded in the Office of the Register of Deeds for Richland County in Record Book 638, Page 2787, then conveyed to Bruce W. Neel by deed of Laura L. Neel dated January 7, 2004 and recorded in Record Book 894, Page 2789.

TMS#4116-06-05

Loan Number: ████████████

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*)-
### Rate Caps-Ten-Year Interest Only Period)

THIS FIXED/ADJUSTABLE RATE RIDER is made this          31st          day of
OCTOBER, 2007           , and is incorporated into and shall be deemed to amend
and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date
given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
SOUTH CAROLINA BANK AND TRUST, N.A., A NATIONAL BANK
                                                                        ("Lender")
of the same date and covering the property described in the Security Instrument and located at:

          13 ASCOT GLEN CT., Irmo, South Carolina 29063
                            [Property Address]

THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE.  THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.  ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial fixed interest rate of          6.125 %.  The Note also provides
for a change in the initial fixed rate to an adjustable interest rate, as follows:

## 4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
. (A)   Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the 1st
day of NOVEMBER, 2012          , and the adjustable interest rate I will pay may change
on that day every 12th month thereafter.  The date on which my initial fixed interest rate changes to an
adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change
Date."
(B)   The Index
Beginning with the first Change Date, my adjustable interest rate will be based on an Index.  The
"Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the
London market ("LIBOR"), as published in *The Wall Street Journal*.  The most recent Index figure available
as of the date 45 days before each Change Date is called the "Current Index."

Borrower Initials: *Bwn*

MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR
Ten-Year Interest Only Period
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3153 2/06                              Page 1 of 4

DocMagic *€Forms* 800-649-1362
www.docmagic.com

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C)  Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 250/1000 percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

(D)  Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.125 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000 percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.125 %.

(E)  Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)  Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

(G)  Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

Borrower Initials: _Bwn_

MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR
Ten-Year Interest Only Period
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3153 2/06                                                Page 2 of 4

DocMagic *ESforms* 800-649-1362
www.docmagic.com

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1.  Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2.  When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will

Borrower Initials: _____

MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR
Ten-Year Interest Only Period
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3153 2/06                                Page 3 of 4

DocMagic *EForms* 800-649-1362
www.docmagic.com

continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)                    _____ (Seal)
BRUCE W. NEEL            -Borrower                                         -Borrower

_____ (Seal)                    _____ (Seal)
                        -Borrower                                         -Borrower

_____ (Seal)                    _____ (Seal)
                        -Borrower                                         -Borrower

MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR        DocMagic eForms 800-649-1362
Ten-Year Interest Only Period                                     www.docmagic.com
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3153 2/06                          Page 4 of 4

Loan Number:

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this        31st        day of
OCTOBER, 2007        , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date,
given by the undersigned (the "Borrower") to secure Borrower's Note to   SOUTH CAROLINA
BANK AND TRUST, N.A., A NATIONAL BANK
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

13 ASCOT GLEN CT., Irmo, South Carolina 29063
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other
such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD

(the "Declaration"). The Property is a part of a planned unit development known as

ASCOT

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent
entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the
uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS.  In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A.  PUD Obligations.  Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation,
trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or
other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and
assessments imposed pursuant to the Constituent Documents.

B.  Property Insurance.  So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and
which provides insurance coverage in the amounts (including deductible levels), for the periods, and against
loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but
not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the
provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property
insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance
coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the
Owners Association policy.

Borrower Initials:  _Bror_  _____  _____  _____

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                          Page 1 of 3

DocMagic eForms  800-649-1362
www.docmagic.com

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C.  Public Liability Insurance.**  Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D.  Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E.  Lender's Prior Consent.**  Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:  (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F.  Remedies.**  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Borrower Initials: _Bam_ _____    _____  _____

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                                    Page 2 of 3

DocMagic *CForms* 800-649-1362
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
BRUCE W. NEEL                          -Borrower                                                    -Borrower

_____ (Seal)          _____ (Seal)
                                              -Borrower                                                    -Borrower

_____ (Seal)          _____ (Seal)
                                              -Borrower                                                    -Borrower

MULTISTATE PUD RIDER–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                    Page 3 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

(Page 1 of 1)

Copy

Book 1883-3272

| | | |
|---|---|---|
| 5013041651 | 6/03/2013 10:45:40:563 Assignment of Mortgage | |
| Fee: $5.00 | County Tax: $0.00 | State Tax: $0.00 |
| 5013041651 | John T. Hopkins II Richland County R.O.D. | |

When Recorded Return To:
Nationstar Mortgage LLC
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SOUTH CAROLINA BANK AND TRUST, N.A., ITS SUCCESSORS AND ASSIGNS, WHOSE ADDRESS IS PO BOX 2026, FLINT, MI, 48501, (ASSIGNOR), by these presents does convey, sell, assign, transfer and set over the described Mortgage together with all interest secured thereby, all liens, and any rights due or to become due thereon to NATIONSTAR MORTGAGE LLC, WHOSE ADDRESS IS 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067 (469)549-2000.

Said Mortgage dated 10/31/2007, made by BRUCE W. NEEL to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SOUTH CAROLINA BANK AND TRUST, N.A. and recorded 11/05/2007 in the Recorder or Registrar of Deeds of RICHLAND County, South Carolina in Book 1373, Page 1582, and/or as Document # 2007099577.

Dated this 22nd day of May in the year 2013
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SOUTH CAROLINA BANK AND TRUST, N.A., ITS SUCCESSORS AND ASSIGNS

_Morgan Massey_
MORGAN MASSEY
ASST. SECRETARY

_France Moss_                     _Danielle K_
FRANCE MOSS          WITNESS          DANIELLE KENNEDY
                                      WITNESS

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 22nd day of May in the year 2013, by Morgan Massey as ASST. SECRETARY for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SOUTH CAROLINA BANK AND TRUST, N.A., ITS SUCCESSORS AND ASSIGNS, who, as such ASST. SECRETARY being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_Tonya L. Tejera_
TONYA L. TEJERA - NOTARY PUBLIC
COMM EXPIRES: 02/28/2017

Tonya L. Tejera
Notary Public State of Florida
My Commission # EE049072
Expires February 28, 2017

Document Prepared By: K.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

Reviewed and Approved as meeting the South Carolina Code of Laws and Recording Statutes by Biddle Law Firm, P.A., Myrtle Beach, South Carolina.

Instrument Number: 2016054580    Book/Page: R 2132/3521    Date/Time: 07/27/2016 15:02:20.963

Book 2132-3521
2016054580  07/27/2016 15:02:20.963
Fee: $13.00    County Tax: $0.00    Modification of Mortgage

Richland County R.O.D.

Return to:
Document Recording Services
P.O. Box 3008
Tallahassee, FL  32315-3008

This Document Prepared By:
Stacy Paredes
**NATIONSTAR MORTGAGE LLC**
**8950 CYPRESS WATERS BLVD**
**COPPELL, TX 76019**

Parcel ID Number: 4116-06-05

_____ [Space Above This Line For Recording Data] _____

Original Recording Date: November 05, 2007                    Loan No
Original Loan Amount: $350,000.00                             Investor Loan No
New Money: $10,648.83

## FREDDIE MAC STANDARD MODIFICATION AGREEMENT

Borrower ("I"):  **BRUCE W. NEEL**. Borrower is the grantor/mortgagor under the first lien mortgage, deed of trust, or security deed referenced below. If more than one Borrower is executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Lender or Servicer ("Lender"):  **NATIONSTAR MORTGAGE LLC**, whose address is 8950 CYPRESS WATERS BLVD, COPPELL, TX 76019 Lender is the beneficiary/mortgagee under the first lien mortgage, deed of trust, or security deed referenced below.

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **October 31, 2007** and recorded in Book/Liber 1373, Page 1582, Instrument No: 2007099577, recorded on **November 05, 2007**, of the Official Records of RICHLAND County, SC.

Property Address ("Property"):  **13 ASCOT GLEN CT, IRMO, SC 29063**

  Legal Description:
**See Exhibit "A" attached hereto and made a part hereof;**

If my representations and covenants in Section 1 continue to be true in all material respects, then this Freddie Mac Standard Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.  This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

FREDDIE MAC STANDARD MODIFICATION AGREEMENT
8763b 08/14                                                                 (page 1 of 7 pages)

Instrument Number: 2016054580    Book/Page: R 2132/3522    Date Time: 07/27/2016 15:02:20.963

1.  **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  The property has not been condemned nor have I received notice of condemnation.

    C.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D.  I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Freddie Mac Standard Modification Program ("Program"));

    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Home Affordable Modification Program (HAMP) and Freddie Mac Standard Modification, are true and correct; and

    F.  I have made or will make all payments required under a Trial Period Plan or as directed by my Lender until my Loan Documents are permanently modified in accordance with this Agreement.

    G.  In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2.  **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents;

    B.  The Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement; and

    C.  **I DO NOT MEET THE ELIGIBILITY REQUIREMENTS FOR A MODIFICATION UNDER THE FEDERAL GOVERNMENT'S HOME AFFORDABLE MODIFICATION PROGRAM AND THEREFORE I WILL NOT RECEIVE ANY INCENTIVE PAYMENTS FOR TIMELY PAYMENTS OF MY MONTHLY PAYMENT.**

3.  **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on July 1, 2016 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on July 1, 2016.

    A.  The Maturity Date will be: June 1, 2056.

    B.  The modified principal balance of my Note will include all amounts and arrearages that are past due past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new

Instrument Number: 2016054580    Book/Page: R 2132/3523    Date Time: 07/27/2016 15:02:20.963

principal balance of my Note will be $359,766.80 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts will accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of 3.875% will begin to accrue on the New Principal Balance as of June 1, 2016 and the first new monthly payment on the New Principal Balance will be due on July 1, 2016. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Prin & Int Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-40 | 3.875% | June 01, 2016 | $1,476.76 | $543.11 May adjust periodically | $2,019.87 May adjust periodically | July 01, 2016 | 480 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4. Additional Agreements. I (the borrower) agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan

FREDDIE MAC STANDARD MODIFICATION AGREEMENT
8763b 08/14

*(page 3 of 7 pages*

Instrument Number: 2016054580    Book/Page: R 2132/3524    Date Time: 07/27/2016 15:02:20.963

or other agreement that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account

E.  That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows:  If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage.  However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer.  If Lender exercises this option, Lender shall give me notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage.  If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3.  A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan.  Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement.  I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect

Instrument Number: 2016054580    Book/Page: R 2132/3525    Date Time: 07/27/2016 15:02:20.953

upon notice of such error. If I elect not to sign any such corrective Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, a mailing address of P.O. Box 2026, Flint, MI 48501-2026, a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834, and telephone number of (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

P. This Agreement modifies an obligation secured by an existing security instrument recorded in RICHLAND County, SC, upon which all recordation taxes have been paid. As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $349,117.97. The principal balance secured by the existing security instrument as a result of this Agreement is $359,766.80, which amount represents the excess of the unpaid principal balance of this original obligation.

Q. In the event of any action(s) arising out of or relating to this Agreement or in connection with any foreclosure action(s) dismissed as a result of entering into this Agreement, if permitted by applicable law, I will remain liable for and bear my own attorney fees and costs incurred in connection with any such action(s).

FREDDIE MAC STANDARD MODIFICATION AGREEMENT
6763b 08/14                                                                      (page 5 of 7 pages)

Instrument Number: 2016054580    Book/Page: R 2132/3526    Date Time: 07/27/2016 15:02:20.963

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal) __7/5/16__ Date
BRUCE W. NEEL  -Borrower

_____ -Witness    _____ -Witness
Signature                              Signature

__Tom P. Thomas__ -Witness    __Jacquelyn E. Miller__ -Witness
Print Name                            Print Name

_____ [Space Below This Line For Acknowledgments] _____

State of South Carolina

County of __Richland__

On this __5th__ day of __July_____, 20 __16__ before me, a Notary Public personally
appeared BRUCE W. NEEL who provided satisfactory evidence of his/her identification to be the person
whose name is subscribed to this instrument, and he/she acknowledged that he/she executed the
foregoing instrument.

_____
(Signature of Notary Public)

__Jacquelyn E. Miller__
(Printed Name of Notary Public)

__Richland_____ County, South Carolina

My commission expires : __3/3/26__

FREDDIE MAC STANDARD MODIFICATION AGREEMENT
8703b 08/14                                                      (page 6 of 7 pages)

Instrument Number: 2016054580   Book/Page: R 2132/3527   Date Time: 07/27/2016 15:02:20.983

**NATIONSTAR MORTGAGE LLC**

By: _____    (Seal) - Lender
Name: _____Stacy Paredes_____
Title: **Assistant Secretary**

7/15/16
Date of Lender's Signature

_Jacob Valdez_  Jacob Valdez -Witness     _Becky Mal_  Becky Neal    -Witness
                              [Space Below This Line For Acknowledgments] _____
The State of TX
County of Dallas

Before me __Azra Habibija_____/Notary Public (name/title of officer) on this day
personally appeared ___Stacy Paredes_____, the Assistant Secretary of Nationstar
Mortgage LLC, known to me or proved to me on the oath of _____ or through
_____(description of identity card or other document)) to be the
person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed
the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this  15th  day of  July  , A.D., 2016


Signature of Officer

Notary Public
Title of Officer

My Commission expires : 10/9/17

AZRA HABIBIJA
Notary Public, State of Texas
My Comm. Expires 10-09-2017
Notary ID 129588908



FREDDIE MAC STANDARD MODIFICATION AGREEMENT
8763b 08/14                                                    (page 7 of 7 pages)

Instrument Number: 2016054580   Book/Page: R 2132/3528   Date Time: 07/27/2016 15:02:20.963

## Exhibit "A"

Loan Number: ▮▮▮▮▮▮

Property Address: **13 ASCOT GLEN CT, IRMO, SC 29063**

Legal Description:
ALL THAT CERTAIN PIECE, PARCEL OR LOT OF LAND, WITH THE IMPROVEMENTS THEREON,
SITUATE, LYING AND BEING IN THE COUNTY OF RICHLAND, STATE OF SOUTH CAROLINA,
BEING SHOWN AND DELINEATED AS LOT 281 ON A PLAT OF ASCOT GLEN PHASE ONE
PREPARED BY BELTER AND ASSOCIATES, INC. DATED JULY 12, 1998, LAST REVISED JUNE
21, 2000, AND RECORDED IN THE OFFICE OF THE ROD FOR RICHLAND COUNTY IN RECORD
BOOK 455, AT PAGE 711; REFERENCE BEING MADE TO SAID PLAT WHICH IS INCORPORATED
HEREIN BY REFERENCE FOR A MORE COMPLETE AND ACCURATE DESCRIPTION; ALL
MEASUREMENTS BEING A LITTLE MORE OR LESS.

### Derivation Clause:

The instrument constituting the source of **BRUCE W. NEEL**'s interest in the
foregoing described Property was a Deed, from **LAURA L. NEEL**, Grantor, to **BRUCE
W. NEEL**, Grantee, recorded on 01/07/2004 at Book 894, Page 2789 under
Instrument No. N/A in the Register's Office of RICHLAND County, SC.



Exhibit A Legal Description Attachment 11/12                                    Page 1 of 1

**Copy**



8950 Cypress Waters Blvd.
Coppell, TX 75019

CHANGING THE FACE OF HOME LOANS

05/12/2019

OUR INFO
ONLINE
**www.mrcooper.com**

YOUR CLIENT'S INFO
DEBTOR(S)
**BRUCE NEEL**
CASE NUMBER
**1901190**
LOAN NUMBER
███5523

STONE LAW FIRM LLC
PO BOX 3884
IRMO SC 29063

PROPERTY ADDRESS
**13 Ascot Glen Ct**
**Irmo, SC 29063**

Dear STONE LAW FIRM LLC:

Our records indicate that you represent Bruce Neel (hereinafter "your client") in the above-referenced Bankruptcy proceeding.

The enclosed letter is intended for your client. We have sent this letter to you because of the attorney/client relationship and the above-referenced loan is presumably a subject of your legal representation. Therefore, we consider service of the attached letter as service to your client.

At your earliest convenience, please review the attached and forward to your client.

If you or your client have any questions, your client(s) Dedicated Loan Specialist is John Phillips and can be reached at (866)-316-2432 or via mail at the address listed above. Our hours of operation are Monday through Thursday 7 am to 8 pm (CT), Friday 7 am to 7 pm (CT) and Saturday 8 am to 12 pm (CT).

Sincerely,

Mr. Cooper

Enclosure(s)

Mr. Cooper is a brand name for Nationstar Mortgage LLC. Nationstar Mortgage LLC is doing business as Nationstar Mortgage LLC d/b/a Mr.
Cooper. Mr. Cooper is a registered service mark of Nationstar Mortgage LLC. All rights reserved.


EQUAL HOUSING
OPPORTUNITY

**Copy**

 8950 Cypress Waters Blvd.
Coppell, TX 75019

CHANGING THE FACE OF HOME LOANS

**05/12/2019** 

OUR INFO
ONLINE
**www.mrcooper.com**

YOUR INFO
DEBTOR(S)
BRUCE NEEL
CASE NUMBER
1901190
LOAN NUMBER
███████5823

BRUCE NEEL
13 ASCOT GLEN CT
IRMO, SC 29063

PROPERTY ADDRESS
**13 ASCOT GLEN CT
IRMO, SC 29063**

Dear BRUCE NEEL:

We have reviewed your application for mortgage assistance. Please find a summary of the programs for which you were evaluated below, based on the eligibility requirements of Freddie Mac, the owner/guarantor/trustee of the mortgage loan. Freddie Mac requires us to review your application for the options available to you in a certain order. This means that if you are approved for an option higher in the order, you may not qualify for options that are lower down on the list.

Please note that we have reviewed you for options that would allow you to keep the property and for options that would mean that you would not keep the property. Although you may have requested a specific loss mitigation option, we have evaluated you for all other available options to ensure you have sufficient information to make an informed decision.

- **Flex Modification** - Declined
- **Short Sale** - Conditionally Approved
- **Deed In Lieu** - Conditionally Approved

Detailed information about the available loss mitigation programs and our analysis of your eligibility are provided below. You may find you are approved, or conditionally approved, for several different options. If you are eligible for more than one option, you may only accept one offer. Please note the deadlines to respond to each offer because if you do not respond in time, we will treat that as a rejection of the offer. To appeal a modification denial, you must appeal by the specified deadline.

Please be sure to read the instructions related to each option carefully. Please note that, unless specified otherwise, the instructions in each section relate only to the option discussed in that section.

**I. Retention Option:** Retention options allow a borrower to continue to make payments and remain in the property.

**A. Modification:** A modification changes the terms of the loan to cure past-due amounts and usually provides for more affordable payments.

**Modification Program Review**

You were evaluated for mortgage payment assistance based on the eligibility requirements of Freddie Mac, but were declined for the following program(s).

- **Flex Modification** - Declined

Mr. Cooper is a brand name for Nationstar Mortgage LLC. Nationstar Mortgage LLC is doing business as Nationstar Mortgage LLC d/b/a Mr. Cooper. Mr. Cooper is a registered service mark of Nationstar Mortgage LLC. All rights reserved.

**Please be advised this communication is sent for informational purposes only and is not intended as an attempt to collect, assess, or recover a claim against, or demand payment from, any individual protected by the U.S. Bankruptcy Code. If this account has been discharged in a bankruptcy proceeding, be advised this communication is for informational purposes only and not an attempt to collect a debt against you; however, the servicer/lender reserves the right to exercise the legal rights only against the property securing the loan obligation, including the right to foreclose its lien under appropriate circumstances. Nothing in this communication shall be construed as an attempt to collect against the borrower personally or an attempt to revive personal liability.**
If you are a successor in interest (received the property from a relative through death, devise, or divorce, and you are not a borrower on the loan) that has not assumed, or otherwise become obligated on the debt, this communication is for informational purposes only and is not an attempt to collect a debt from you personally.

50-68-D

**Copy**



- **Denial Reason:** Insufficient Monthly Payment Reduction

  We are unable to offer you a modification because in performing our underwriting of a potential modification we could not reduce your principal and interest payment.

Please note, as the servicer of the loan, we are responsible for responding to any questions related to investor requirements or the review of your request for assistance.

**Right to Appeal**

You have the right to appeal the loan modification denial within 30 calendar days from the date of this notice. The appeal must be in writing, state that you are requesting an appeal of our decision, and must be sent to the mailing address below. You must include in the appeal your name, property address, and mortgage loan number. Please specify the basis for your dispute, and include any documentation you believe is relevant to the appeal, such as property valuation or proof of income.

<div align="center">

Mr. Cooper
Attn: Notice of Error/Request for Information
PO Box 619098
Dallas, TX 75261-9741

</div>

If you elect to appeal, we will provide you a written notice of our appeal decision within 30 calendar days of receiving your appeal. Our appeal decision is final, and not subject to further appeal.

**II. Non-Retention Option:** A non-retention option allows a borrower to transition out of their property without going through foreclosure. Non-retention options include Short Sales or Deeds-In-Lieu (sometimes known as a Mortgage Release)

   **A. Short Sale:** This option permits a borrower to sell their home for less than the balance remaining on the mortgage loan. Depending upon applicable law and investor requirements, a borrower may or may not be required to pay funds to reduce the difference between the amount owed and the approved purchase price.

Based on a careful review of your information, we are offering you an opportunity to pursue a short sale subject to the conditions set forth below. A final decision on the short sale is contingent upon our review of the purchase contract and any applicable Investor requirements. If the purchase contract is acceptable, you will receive a written final approval and closing information. If the purchase contract is unacceptable, we will notify you that the Short Sale is not approved.

**If you are interested in selling your property through a Short Sale, please follow the steps below.**

1. Contact us at 866-316-2432 or in writing at PO Box 619097, Dallas, TX 75261 no later than 5/26/19 to indicate your intent to accept this offer to pursue a short sale. If you indicate your intent to accept this offer we will defer or suspend foreclosure action on your loan until 6/26/19 while you attempt to sell your home. If you do not contact us by 5/26/19 to accept this offer, and you have not accepted another loss mitigation option or appealed our denial of a modification, we may start or continue foreclosure and a foreclosure sale may occur.
2. If you have not already done so, you will need to contact a real estate agent and list the property for sale. If you wish us to work directly with your real estate agent or another party on your behalf, you will need to provide a Third Party Authorization to us. You can obtain a Third Party Authorization form on our website at www.mrcooper.com.
   - If you need help finding a real estate agent, contact your Single Point of Contact (SPOC) who can refer you to a listing agent in your area.
3. If you have not already done so, have your real estate agent initiate a Short Sale case in Equator (our system of record) at www.equator.com to start the Short Sale review.
4. If you have not already done so, have your real estate agent provide the following documents in Equator once they are available:
   - Third Party Authorization
   - Multiple Listing Service (MLS)
   - Listing Agreement
   - Purchase Agreement (if you have an offer)
   - Proposed Closing Disclosure or Settlement Statement (if you have an offer)
   - Buyer's Proof of Funds (if you have an offer)
   - Note: Based on Investor requirements, additional documentation may be required

**Copy**



We will review any offers that are received for acceptability. Please be prepared to allow access to the property for an interior valuation of your home.

In some cases, a short sale auction may be required as part of the evaluation process to either help find an offer or validate an offer you already have. If an auction is required, you will be given further information and asked to sign a Short Sale Auction Agreement.

If you are not able to obtain a purchase offer that is acceptable to us by 6/26/19, you may continue your short sale effort, but we may commence or continue foreclosure. We may review any purchase offer submitted, but only if there is adequate time to evaluate the offer prior to the foreclosure sale date.

**NOTE: Cancellation of debt may have tax consequences. Please consult your tax advisor to discuss potential tax consequences.**

   **B. Deed-in-Lieu/Mortgage Release:** A Deed-in-Lieu, also called a "Mortgage Release", permits a borrower to voluntarily transfer the property to the owner of the mortgage to satisfy the debt. Depending upon applicable law and investor requirements, the borrower may be required to pay funds to reduce the difference between the amount owed on the loan and the value of the property being transferred.

Based on a careful review of your information, you have been conditionally approved to pursue a Deed-in-Lieu of foreclosure/Mortgage Release.

**If you are interested in transferring the property through a Deed-in-Lieu/Mortgage Release, please follow the steps below.**

1. Contact us at 866-316-2432 or in writing at PO Box 619097, Dallas, TX 75261 no later than 5/26/19 to indicate your intent to accept this offer to pursue a Deed In Lieu/Mortgage Release. If you indicate your intent to accept this offer we will not refer your loan to foreclosure, or if your loan has been referred to foreclosure, we will suspend the next action in the foreclosure proceedings. If you do not contact us by this date to accept this offer, and you have not accepted another loss mitigation alternative or appealed our denial of a modification, or if you accept but we are unable to complete the Deed In Lieu/Mortgage Release within 45 days of your acceptance, we may start or continue with the foreclosure process and a foreclosure sale may occur.
2. If you have not already done so, go to https://www.mrcooper.com/reference_documents/statement_of_information.pdf to obtain a Statement of Information form. You can also contact your Single Point of Contact and you will be provided with a copy of the form. Make sure all Borrowers on the mortgage have completed, and signed the Statement of Information. Please submit the Statement of Information Form as soon as possible. This provides us with important additional information that we need to start the Deed-in-Lieu/ Mortgage Release final review.
   o Online: www.mrcooper.com
   o Email: modification.assistance@mrcooper.com
   o Fax: 214-488-1993
   o Mail: Attn: Loan Modification Processing Unit -PO Box 619097, Dallas, TX 75261

This approval is conditioned upon a clear title, and if there are any junior lienholders, they must release their interest in the property. You and any other occupants will be required to vacate the property and must leave it in broom swept condition, free of trash, debris or damage, and all personal belongings must be removed. You will need to provide access so that we can conduct an interior inspection of the property. The completion of the Deed-in-lieu/Mortgage Release is still subject to investor and our guidelines.

**NOTE: Cancellation of debt may have tax consequences. Please consult your tax advisor to discuss potential tax consequences.**

**Additional Information Related to All Loss Mitigation Options**

**Copy**



CHANGING THE FACE OF HOME LOANS

**Automated valuation only (electronic, no printed document):** An automated valuation was developed in connection with your application for loss mitigation. The property valuation provided to us electronically was $618,911.00. There is no available written documentation associated with this valuation.

**Visit us on the web at www.mrcooper.com for more information.**

**Notice: The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is: Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.**

If you have any questions, your Dedicated Loan Specialist is John Phillips and can be reached at (866)-316-2432 or via mail at PO Box 619097, Dallas, TX 75261. Our hours of operation are Monday through Thursday 7 am to 8 pm (CT), Friday 7 am to 7 pm (CT) and Saturday 8 am to 12 pm (CT). Visit us on the web at www.mrcooper.com for more information.

Sincerely,

Mr. Cooper

**Copy**



## Notices of Error:

If you believe an error has been made with respect to your mortgage loan, you should provide to us in writing the following information: Your name (and the name of the borrower, if you are an authorized third party), the loan account number, and the error you believe has occurred. To submit a notice of error, you must send this information to the following address:

Mr. Cooper
Notice of Error/Request for Information
PO Box 619098
Dallas, TX 75261-9741

## Requests for Information:

To request information regarding your account, you should provide to us in writing the following information: Your name (and the name of the borrower, if you are an authorized third party), the loan account number, and the information you are requesting with respect to your mortgage loan. To submit a request for information, you must send this information to the following address:

Mr. Cooper
Notice of Error/Request for Information
PO Box 619098
Dallas, TX 75261-9741